IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WANDA L. HEGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV92 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Wanda Leo Hege ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Supplemental Security Income under Title XVI of the Act, as well as Widow's Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits, Supplemental Security Income, and Disabled Widow's Benefits in January 2011, alleging disability beginning January

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2, 2007. (Tr. 315-29.) Her applications were denied initially (Tr. 110-12) and upon reconsideration (Tr. 147-49). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 211-212), which she attended on March 7, 2013, along with her attorney (Tr. 38-52). On April 17, 2013, the ALJ issued a finding that Plaintiff was not disabled under the Act. (Tr. 150-65.) The Appeals Council granted Plaintiff's request for review, and remanded the case to the ALJ. (Tr. 166-70.) The ALJ heard the case on remand on February 10, 2015. (Tr. 53-78.) During the hearing, Plaintiff amended her alleged onset date of disability to May 10, 2011.[2] The ALJ ultimately issued a decision denying Plaintiff's claim for SSI and for Widow's Benefits, after finding that Plaintiff was not disabled under the meaning of the Act. (Tr. 16-37.) On December 8, 2015, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. 1-7.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported

---

[2] Because the amended disability onset date postdated Plaintiff's date last insured of December 31, 2010, the claim for Title II Disability Insurance Benefits was dismissed. (Tr. 19-20.)

by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at

4

179.³ Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. Plaintiff therefore met her burden at step one of the sequential analysis. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Left hip and right knee dysfunction, degenerative disc disease, rotator cuff injury, headaches, vertigo, panic disorder with agoraphobia and depression.

---

³ "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

Case 1:16-cv-00092-LCB-JEP   Document 13   Filed 02/21/17   Page 5 of 12

(Tr. 22). The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. 23). Therefore, the ALJ assessed Plaintiff's RFC and determined that she could

> perform medium work . . . except she is limited to simple, routine, repetitive, non-production oriented work with no public contact.

(Tr. 24). Based on that determination, the ALJ found under step four of the analysis that Plaintiff was incapable of returning to her past relevant work as a Fast Food Worker, a General Retail Laborer, or a Cashier/Checker. (Tr. 30). However, at step five of the analysis, with the assistance of a Vocational Expert's response to an Interrogatory, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 31.) As a result of these findings, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act, from May 10, 2011, through the date of the ALJ decision. (Tr. 32.)

Plaintiff now argues that the ALJ's decision should be reversed because the ALJ (1) erred by failing to assign weight to the medical source opinions of consultative examiner Dr. Joseph Appollo ("Dr. Appollo") and (2) erred in evaluating the severity of Plaintiff's alleged right foot condition at step two of the sequential analysis. (See Pl.'s Br. [Doc. #10] at 2.) Ultimately, neither of Plaintiff's contentions merit remand.

  A. <u>Consideration of Dr. Appollo's Opinion.</u>

Plaintiff first contends that the ALJ erred by failing to assign weight to the opinions of Dr. Appollo, and that this error warrants reversal. Defendant responds that reversal is not warranted because substantial evidence supports the ALJ's evaluation of the opinion evidence

6

Case 1:16-cv-00092-LCB-JEP Document 13 Filed 02/21/17 Page 6 of 12

of Dr. Appollo. Specifically, Defendant argues that the ALJ properly considered and discussed the limitations supported by Dr. Appollo's opinion and adequately accounted for those limitations in forming Plaintiff's RFC.

Pursuant to 20 C.F.R. § 404.1527(c), an ALJ must "evaluate every medical opinion" received, and must consider various factors in deciding the weight to give any medical opinion including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. See 20 C.F.R. § 404.1527(c). Unless the ALJ has analyzed all of the evidence and explained the weight he has given to probative evidence, a reviewing court may be unable "to scrutinize the record as a whole to determine whether the conclusions reached are rational." Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) (quoting Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)).

In this case, Dr. Appollo conducted a consultative psychological examination, and the ALJ discussed Dr. Appollo's opinion at length. First, in undertaking the analysis of Plaintiff's impairment at step two, the ALJ stated:

> I find a moderate limitation in the claimant's ability to maintain concentration, persistence, or pace. Based on his evaluation of the claimant, Dr. Appollo concluded that she has the ability to understand, retain and follow instructions and; that she has average ability to sustain attention to perform simple repetitive tasks. However, he also concluded that with her symptoms of depression, the claimant would have difficulty tolerating the stress and pressure associated [with] day-to-day work activity. During her hearing, the claimant was fully capable of answering all questions and was able to maintain attention without difficulty. Thus, I find that the claimant has no more than moderate limitations in the area of maintaining concentration, persistence, or pace.

(Tr. at 24) (internal citation omitted). In addition, in considering Plaintiff's RFC, the ALJ further considered Dr. Appollo's opinion, noting that:

> [a]lthough the claimaint was diagnosed with depression and panic disorder without agoraphobia by consultative psychologist Dr. Appollo in April 2011, she has not received any mental health treatment, whether outpatient counseling or medication management since 2004. The claimant reported during her hearing that the medication was effective for a period but then it stopped working; she stopped taking it; and she began to have episodes of sudden rages. She indicated that while she has applied for Medicaid, she is dealing with her symptoms of depression and anxiety on her own. Moreover, although Dr. Appollo diagnosed the claimant with depression and panic attacks without agoraphobia, I am reminded that his diagnosis was made at a time when she had not received the benefit of mental health counseling or medication, which could have, and likely, would have helped to stabilize her mood and panic attacks. Despite this, Dr. Appollo concluded that in terms of her mental ability to perform work activities, the claimant has average ability to understand, retain and follow instructions; average ability to sustain attention to perform simple repetitive tasks; and she is able to relate to others. He also concluded that because of her depression, the claimant would have difficulty tolerating the stress and pressures associated with day-to-day work activity, which is why I have limited her to simple, routine, repetitive, non-production oriented work with no public contact.

(Tr. 27-28.) Thus, the ALJ considered and relied upon Dr. Appollo's opinion in assessing Plaintiff's RFC, and noted that, *because of Dr. Appollo's conclusions*, the RFC "limited [Plaintiff] to simple, routine, repetitive, non-production oriented work with no public contact." (Tr. 28.) It therefore appears that, despite Plaintiff's assertion to the contrary, the ALJ expressly relied upon Dr. Appollo's findings to make two distinct additions to Plaintiff's RFC—namely, that Plaintiff (i) should be limited to simple, routine, repetitive, non-production work, and (ii) should have no public contact.[4] In the circumstances, the Court concludes that the ALJ

---

[4] Indeed, at the hearing, Plaintiff's counsel took the position that a hypothetical limiting Plaintiff to "simple; routine; repetitive tasks" in a non-production, unskilled work environment with occasional interaction with the public would be consistent with the findings of the mental health consultative examiner. (Tr. 68, 77.)

8

sufficiently evaluated Dr. Appollo's medical opinion and explained how that opinion was considered in setting Plaintiff's RFC. Moreover, given the extent of the ALJ's analysis, any failure by the ALJ to explicitly state the weight given to Dr. Appollo's opinion was harmless. See Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95 (4th Cir. 2015).

B.  Consideration of Plaintiff's Right Foot Impairment.

Plaintiff next argues that this case should be remanded based on the ALJ's failure to classify Plaintiff's right foot condition as a "severe" impairment at step two of the sequential evaluation process. Step two of the sequential analysis is a threshold determination of whether a claimant has a severe impairment (or combination of impairments) significantly limiting her ability to do basic work activities. If a claimant does not have any severe impairment or combination of impairments, the claimant is determined not to be disabled at step two, and the sequential analysis need not progress further. See 20 C.F.R. § 404.1520(a)(4)(ii). However, if the claimant does have a severe impairment or combination of impairments, the sequential analysis continues, and the ALJ must consider the effects of both the severe and non-severe impairments at subsequent steps of the process. Thus, as long as an ALJ determines that the claimant has at least one severe impairment at step two and then proceeds to discuss all of the medical evidence in the analysis of the remaining steps, any error regarding a failure to list a specific impairment at step two is harmless.

In this case, Defendant contends that even though the ALJ did not identify Plaintiff's right foot impairments in the list of severe impairments at step two, the ALJ nevertheless considered the evidence related to Plaintiff's right foot. At the February 10, 2015 hearing, Plaintiff testified that she had been experiencing pain in her right foot for "six, eight months,"

and that "wearing shoes" and "walking a lot" tended to exacerbate the problem. (Tr. 61.) In the decision denying Plaintiff an award of benefits, the ALJ discussed Plaintiff's alleged right foot condition at several points. The ALJ began by acknowledging that at the hearing, Plaintiff complained of "right foot pain that is aggravated by wearing shoes and walking." (Tr. 25.) In addition, the ALJ noted that

> [t]he treatment notes show that the claimant did not complain of any pain symptoms [from May 2011] until January 2015 when she reported to the emergency room for pain in her back, right hip and right foot after she tripped and fell. . . . Her right foot examination revealed tenderness and bony tenderness but a normal range of motion, no swelling and no deformity. . . . [H]er right foot x-ray showed small degenerative changes. The claimant was diagnosed with low back pain, right hip strain and right foot strain. For treatment, she was provided with a fracture boot for the right foot to help with support and comfort; Motrin/Tylenol for pain control and a prescription for acute pain control, if needed.

(Tr. at 26-27.)[5] The ALJ then concluded that Plaintiff's physical impairments did not support her allegations of disabling symptoms and limitations. The ALJ noted that Plaintiff did not pursue "routine primary care or specialized care with regard to any pain complaints until January 2015." (Tr. 29-30.)[6] The ALJ also noted that even after the emergency room visit in January 2015, "she was diagnosed with and was treated conservatively for back pain, right hip strain and right foot strain." (Tr. at 30.) Thus, as to Plaintiff's foot, the ALJ considered the fact that the diagnosis was only "right foot strain" and the treatment was conservative. The ALJ also noted that "although complaining of intermittent pain in back, hips, knees and right

---

[5] The same medical record notes "small degenerative calcaneal posterior and plantar enthesophytes," (Tr. 568, 570), which appear to have been incorporated in evaluating Plaintiff's symptoms and determining her treatment plan (see Tr. 568-69).

[6] Based on Plaintiff's testimony, this would mean that Plaintiff went several months without medical attention after symptoms in her right foot appeared.

10

foot and pain from headaches, the claimant testified that she does not like to take prescribed medication" and "confined herself to over-the-counter medications." (Id.) The ALJ concluded that "the medical evidence does not document pain of such intensity that the ordinary physical activity to perform basic work-related functions would be impossible for a continuous period of twelve months or more" and "[o]verall, the claimant's testimony regarding the persistence of pain . . . is not credible because it is inconsistent with the medical evidence and her activities of daily living." (Id.)

In light of this analysis, the Court holds that the ALJ sufficiently considered the limiting effects of Plaintiff's right foot condition throughout the sequential evaluation process, giving evidence-based reasons for his findings. Thus, even though the ALJ did not include Plaintiff's right foot condition as a separate severe impairment at step two, there was no resulting prejudice to Plaintiff because the ALJ considered the effects of that impairment at later steps, ultimately determining that the medical evidence failed to support Plaintiff's allegations of disabling symptoms and limitations and that Plaintiff's testimony regarding the intensity and disabling effect of the impairment was not credible. (Tr. 26, 28.)

The ALJ's decision reflects that he conducted a thorough review of the evidence before him, allowing this Court to conclude that his decision was supported by substantial evidence.

IV. <u>CONCLUSION</u>

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #9] be

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED.

This, the 21st day of February, 2017.

    /s/ Joi Elizabeth Peake
United States Magistrate Judge